UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| ERIC WESTRY, |
| *Plaintiff*, |
| |
| v. | No. 3:17-cv-00862 (VAB) |
| |
| VICTOR LEON, |
| *Defendant.* |

**RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

Eric Westry ("Plaintiff") has sued Victor Leon ("Defendant"), an officer in the Waterbury Police Department, in his individual capacity under 42 U.S.C. § 1983 for excessive force in violation of the Fourth Amendment. Compl., ECF No. 1 ¶¶ 4, 8 (May 23, 2017).

Officer Leon has moved for summary judgment, and Mr. Westry has objected.

For the reasons discussed below, Defendant's motion for summary judgment is **GRANTED in part** and **DENIED in part**.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

   A.  **Factual Background**

As of April 5, 2016, Eric and Maria Westry were married and had a daughter, Amelia Westry, born on February 27, 2015. Pl.'s Local Rule 56 Statement, ECF No. 34-1 ¶¶ 1, 14 (July 5, 2019) ("Pl.'s SMF"). On that date, Victor Leon, a police officer with the Waterbury Police Department for the City of Waterbury, came to their home. *Id.* ¶ 10.

A call to the Victim Services' Hotline from Mrs. Westry prompted Officer Leon's visit. *Id.* ¶ 13. In that call, Mrs. Westry described being under the kitchen table, while her husband was locked in the bedroom with their baby daughter, Amelia. *Id*. When Officer Leon and other police officers arrived, Mrs. Westry described having been assaulted by Mr. Westry and stated that he

1

continued to be locked in the bedroom with their child. *Id.* ¶ 14. Mr. Westry allegedly had "slap[ped] her in the face numerous times and drag[ged] her out of the bedroom." *Id.* ¶ 15. Officer Leon noticed red marks all over Mrs. Westry's face. *Id.* ¶ 16.

Officer Leon and the other police officers knocked on the bedroom door, but Mr. Westry did not open the door. *Id.* ¶ 18. Officer Leon, who claimed he feared for the safety of the child, broke through the door and entered the room. *Id.* ¶ 24. He found Mr. Westry lying in bed and holding young Amelia. *Id.* ¶ 25.

Mr. Westry recorded the interaction in the bedroom with the police officers. Ex. 1: Cell Phone Video, ECF No. 34-2 (July 11, 2019). The resulting videotape mainly shows the ceiling of the bedroom, but the accompanying audio captured the voices of both the police officers and Mr. Westry. *Id.*

Upon entering the bedroom, an officer asked Mr. Westry, "Sir, do you want to get up?" to which he responded, "No, I don't." *Id.* An officer continued to ask Mr. Westry to leave his bed, and Mr. Westry responded several times by stating, "Leave my house please." *Id.* An officer then can be heard saying, "Listen, we're gonna [sic] do this one way: you're either gonna [sic] leave the bed, or we're gonna [sic] have to take you off the bed," and Mr. Westry responds, "you're going to have to kill me." *Id.*

An officer then said, "I'll take the kid." *Id.* Another officer said, 'Sir, we got a baby there," and Mr. Westry then said, "No. I will hand her to you." *Id.* Amelia Westry can then be heard crying. Mr. Westry then said, "I am handing her to you." *Id.* One of the police officers then said, "You're gonna [sic] hurt the baby." *Id.* Mr. Westry then said, "Get off of me," while an

officer responded, "Relax, no, relax." *Id.*[1] An officer then used the TASER. *Id.* Mr. Westry then stated, "I have a heart condition." *Id.* The officers then instructed Mr. Westry to "put [his] hands behind [his] back" and to "get on [his] stomach." *Id.*

After the police placed Mr. Westry in handcuffs, an officer said to him, "Why you gotta be like that man?" *Id.* Mr. Westry said, "I'm taking blood pressure medication, you coulda [sic] killed me." *Id.* An officer then said, "You should've listened to us. You know what's easier? You just get out of bed when the police ask. It's ridiculous. There's no reason to do all of this. Swing your feet up." *Id.* The officer further said that Mr. Westry "could've made it a little easier, could've just gotten up it would've been done. Gotta do it the hard way." *Id.*

The last voices heard on the recording are police officers. *Id.* One stated, "What's up buddy?," and another responded, "[inaudible] gotta tase somebody." *Id.* The officer asked, "That was you?" and the other officer responded, "Yup." *Id.*

The officers arrested and charged Mr. Westry. Pl.'s SMF ¶ 35. All criminal charges brought against Mr. Westry by Officer Leon, however, ultimately were dismissed. *Id.* ¶ B6.

**B.     Procedural History**

On May 23, 2017, Mr. Westry filed a Complaint against Officer Leon in his individual capacity under 42 U.S.C. § 1983 for excessive force in violation of the Fourth Amendment. Compl. ¶ 8. Mr. Westry seeks compensatory damages, punitive damages, attorneys' fees, and costs. *Id.* at 2.

On June 26, 2017, Leon timely filed his Answer with affirmative defenses and a request for a jury trial. Answer, ECF No. 11 (June 26, 2017).

---

[1] Mr. Westry alleged that as they approached, the officers tried to wrestle Mr. Westry's daughter away, but that "as they were pulling on his daughter they were also pulling on his arms and he was pulling back." Def.'s SMF at ¶¶ 31, 32.

3

On June 17, 2019, Officer Leon moved for summary judgment. Mot. for Summ. J., ECF No. 33 (June 17, 2019) ("Def.'s Mot."); Mem. of Law in Supp. of Def.'s Mot., ECF No. 33-1 (June 17, 2019) ("Def.'s Mem."); Local Rule 56(a)(1) Statement of Undisputed Material Facts, ECF No. 33-2 (June 17, 2019) ("Def.'s SMF").

On July 5, 2019, Plaintiff filed his opposition. Pl.'s Mem. in Opp. to Def.'s Mot., ECF No. 34 (July 5, 2019) ("Pl.'s Opp."); Pl.'s SMF.

On July 17, 2019, Officer Leon filed a reply to Plaintiff's response. Def.'s Reply to Pl.'s Opp., ECF No. 36 (July 17, 2019) ("Def.'s Reply").

On December 4, 2019, the Court held a hearing on the Motion for Summary Judgment. Minute Entry, ECF No. 38 (Dec. 4, 2019).

## II.     STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48.

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.

1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law.") (citing *Anderson*, 477 U.S. at 248).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *See Dufort v. City of N.Y.*, 874 F.3d 338, 343 (2d Cir. 2017) ("On a motion for summary judgment, the court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'"). A court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials, *see Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011), and will grant summary judgment only "if, under the governing law, there can be but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

## III. DISCUSSION

Section 1983 provides a private right of action against state officials for Constitutional violations:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotations and citation omitted).

This lawsuit involves the Fourth Amendment's protections against unreasonable searches and seizures committed by an individual acting under the color of law. Mr. Westry alleges the use of excessive force in violation of the Fourth Amendment of the U.S. Constitution. The alleged excessive use of force here was Officer Leon's use of his TASER during Mr. Westry's arrest. Compl. ¶ 6.

Officer Leon seeks dismissal of Mr. Westry's claims on summary judgment, arguing that he did not violate any of Mr. Westry's rights, or in the alternative, that even if he did violate Mr. Westry's rights, he is protected by qualified immunity. Def.'s Mem. at 1.

Accordingly, the Court will first examine Mr. Westry's excessive force claim under the Fourth Amendment, then, if necessary, address Officer Leon's qualified immunity defense.

### A. The Fourth Amendment Excessive Force Claim

The Fourth Amendment prohibits the use of excessive force during arrests. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). Determining whether the force was reasonable "requires a

careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. at 396 (internal quotations and citations omitted). In making that determination, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." *Id*.

It is an objective standard that considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396-97; *see also Elliott v. Cty. of Monroe*, 115 Fed. App'x 497, 498 (2d Cir. 2004) (a reasonableness inquiry "must consider all the facts of the case, including the severity of the crime, whether the arrestee posed an immediate threat to the safety of others, and whether she actively resisted the arrest"). However, "the frustration of an officer's attempts to gain compliance . . . does not constitute active resistance." *Bryant v. Meriden Police Dep't*, No. 3:13-cv-449, 2017 WL 1217090 at *9 (D. Conn. Mar. 31, 2017). As a result, "granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty America v. Town of West Hartford*, 361 F.3d 113 (2004) (citing *O'Bert v. Vargo*, 331 F.3d 29, 37 (2d Cir. 2003)).

Officer Leon argues that "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," his use of the TASER was reasonable and justified. Def.'s Mem. at 7. He reiterates the circumstances leading up to the officers' arrival at the Westry home: his dispatch to the Westry home, following a Victims' Services Hotline call; the information in the call about a woman hiding under the kitchen table, while her husband was locked in the bedroom with their minor child; upon arrival, finding Mrs. Westry crying

hysterically; Mrs. Westry stating that she had been assaulted and that her husband was now locked in the bedroom with their minor child; observing the red marks on Mrs. Westry's face, consistent with her alleged assault; and Mr. Westry "both resisting arrest and placing the safety of his daughter, Amelia, and the police officer in jeopardy." *Id.* at 7-8.

Mr. Westry argues that he did not pose any immediate threat to anyone, his resistance was entirely passive, and he was not attempting to flee. Pl.'s Opp. at 3. He does not dispute the Victims' Services call or that he had a verbal and physical altercation with Mrs. Westry. *Id.* at 1. But Mr. Westry contends that he "never raised his voice [to Officer Leon] and spoke softly at all times." *Id.* at 2. Mr. Westry further asserts that "[he] did not ever threaten or forcibly oppose the defendant in any way[,] he simply refused to get out of bed." *Id.* Finally, Mr. Westry argues that the recording of this interaction demonstrates the existence of a genuine dispute of material fact. *Id.* at 3; *see also* Ex. 1: Cell Phone Video, ECF No. 34-2 (July 11, 2019).

In reply, Officer Leon again emphasizes that his use of the TASER was justified by two factors: (1) the domestic disturbance call involving physical and verbal assaults and (2) Mr. Westry's refusal to comply with Officer Leon's requests and warnings at the scene of arrest. Def.'s Reply at 7-8. By refusing to comply with the instructions of the police, Officer Leon argues that Mr. Westry was thus "actively resisting arrest." Def.'s Reply at 8. Officer Leon also submits that Mr. Westry was "clearly a threat" to the safety of both the officers present and Mr. Westry's daughter. *Id.* According to Officer Leon, Mr. Westry was "continuing to display hostility to the officers as he continued to hold his minor child in his grasp and engaging [sic] in a tug of war with his child and the officers." *Id.* at 9. Officer Leon argues that summary judgment should be granted because "under these circumstances, the actions [were] totally reasonable and, therefore, no constitutional violation occurred." *Id.* at 8.

The Court disagrees.

Because this is a fact-intensive inquiry, the determination of objective reasonableness of the use of force used by Officer Leon must be made by a jury. *See Hemphill v. Schott*, 141 F.3d 412, 417 (2d. Cir. 1998) (finding that the question of whether the use of potentially deadly force was reasonable remained in dispute when two of the factors were contested). Here, there is a genuine dispute of material fact as to what threat Mr. Westry posed and what force was necessary for Officer Leon to use during Mr. Westry's arrest. *Compare* Pl.'s Opp. at 2-3 (summarizing Mr. Westry's contention that he was lying quietly in bed holding his daughter, that he spoke softly at all times, and that he "did not pose any immediate threat to anyone"), *with* Def.'s Reply at 8 (summarizing Officer Leon's contention that in light of the impetus for the officers' visit to Mr. Westry's house, and Mr. Westry's refusal to comply with the officers' instructions, he was not only actively resisting arrest, but was "clearly a threat to the safety of the officers" and his minor child). As a result, there exists a genuine dispute as to the material fact of whether or not Officer Leon was justified in his use of the TASER.

Accordingly, the excessive force claim against Officer Leon will not be dismissed, and the Court denies summary judgment on this claim.

### B. The Issue of Qualified Immunity

Even if a reasonable jury could find that Officer Leon had violated Mr. Westry's Fourth Amendment rights and used excessive force, Officer Leon may still be entitled to summary judgment on qualified immunity grounds. *See generally Gonzalez v. City of Schenactady,* 728 F.3d 149, 158 (2d Cir 2013) (affirming district court's summary judgment ruling that, though defendants arrested plaintiff without probable cause and conducted an unreasonable search under

the Fourth Amendment, defendants were nevertheless entitled to summary judgment on qualified immunity grounds).

"Qualified immunity protects federal and state officials from money damages and unnecessary and burdensome discovery or trial proceedings." *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012) (citing *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)) (internal quotation marks omitted); *see also Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006) ("Qualified immunity shields police officers acting in their official capacity from suits for damages unless their actions violate clearly-established rights of which an objectively reasonable official would have known." (internal quotation marks omitted)). It "is an affirmative defense that the defendants have the burden of raising in their answer and establishing at trial or on a motion for summary judgment." *Coollick*, 699 F.3d at 219.

When a court analyzes the question of whether public officials are entitled to qualified immunity, there are two issues that guide the inquiry. *See Zalaski v. City of Hartford*, 723 F.3d 382, 388-89 (2d Cir. 2013). First, the court considers whether "the facts show that the officer's conduct violated plaintiff's constitutional rights." *Id*. Second, if the answer is no, "further inquiry is unnecessary because [ ] there is no viable constitutional claim," but if the answer is yes, "or at least not definitively no," the court may move on to the second question "was the right clearly established at the time of defendant's actions?" *Id*.

Courts need not consider these two questions in order, and may consider the latter question first, which may be "particularly appropriate where the former turns on difficult or novel questions of constitutional or statutory interpretation, but it is nevertheless clear that the challenged conduct was not objectively unreasonable in light of existing law." *Id*. (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)) (internal quotation marks omitted).

Also, although the Fourth Amendment prohibits the use of excessive force in effecting an arrest, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it[.]" *Graham*, 490 U.S. at 396. "An officer conducting a search is entitled to qualified immunity where clearly established law does not show that the search violated the Fourth Amendment." *Pearson*, 555 U.S. at 243-44 (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

"In the Second Circuit, qualified immunity analysis consists of a three-step inquiry examining whether there is an alleged violation of a constitutional right, whether the right was clearly established at the time of the conduct, and—if the right was clearly established—whether the defendants' actions were objectively reasonable." *Palmieri v. Kammerer*, 690 F.Supp.2d 34, 36 (D. Conn. 2010) (quoting *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 211 (2d Cir. 2003).

"[T]he clearly established right must be defined with specificity." *City of Escondido, Cal. v. Emmons*, 149 S.Ct. 500, 501 (2019) (finding that defining the clearly established as "the right to be free of excessive force" was too general). It is a "constitutional right[ ] of which a reasonable person would have known" and "reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018) (per curiam) (internal citations and quotations omitted). "[S]pecificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (per curiam). "For law to be clearly established, it is not necessary to identify a case directly on point. But precedent must have spoken with sufficient clarify to have placed the constitutional question at issue

beyond debate." *Mara v. Rilling*, 921 F.3d 48, 68 (2d Cir. 2019) (citing *Ashcroft v. al-Kidd*, 653 U.S. 731, 735 (2011)).

Officer Leon acknowledges that "[i]t is clearly established that officers may not use a TASER against a compliant or non-threatening suspect," Def.'s Mem. at 12, but he argues that he is entitled to qualified immunity because Mr. Westry was "anything but compliant and non-threatening," *id.* at 13 (citing *Muschette on Behalf of A.M. v. Gionfriddo*, 910 F.3d 65 (2d Cir. 2018), and *Soto v. Gaudett*, 862 F.3d 148 (2d Cir. 2017), for the proposition that a resisting and non-compliant person does not have a right protecting them from the use of a TASER).

In response, Mr. Westry attempts to distinguish these facts from the relevant cases. Pl.'s Opp. at 3. Westry emphasizes that in *Muschette*, before the officer's use of a TASER, the plaintiff was in flight and presented an immediate threat because he was "holding a large rock." *Id.* at 4 (citing *Muschette* 910 F.3d at 70). Mr. Westry also notes that the plaintiff in *Soto* was actively fleeing when the officer shot him with his TASER. *Id.* (citing *Soto*, 862 F.2d at 159).

In reply, Officer Leon emphasizes that Mr. Westry was "anything but compliant and non-threatening," and that Mr. Westry conceded he was "refusing to comply with the [D]efendant's instructions." Def.'s Reply at 8 (citing Pl.'s Opp. at 3). Officer Leon argues that under the specific facts of the case (namely, that the police were called to Mr. Westry's house because of a physical altercation between Mr. and Mrs. Westry, that Mr. Westry allegedly "display[ed] hostility to the officers," and that Mr. Westry allegedly engage[d] in a tug of war with his child and the officers"), "it cannot be said that . . . a clearly defined constitutional right existed for which he was aware and which he violated." *Id.* at 9. Thus, according to Officer Leon, the affirmative defense of qualified immunity applies. *Id.*

The Court agrees.

The prohibition of excessive force while effectuating an arrest is clearly established. *See Outlaw v. City of Hartford*, 884 F.3d 351, 364 (2d Cir. 2018) ("That the law prohibits excessive force when using force to make an arrest is neither a recent nor surprising development.") (internal citations omitted)); *Mickle*, 287 F.3d at 122 (noting that it is "well established that the use of excessive force in the course of an arrest is constitutionally prohibited") (internal citations and quotation marks omitted)); *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999) ("The Fourth Amendment protects against the use of excessive force by police officers in carrying out an arrest."). But the use of some degree of force during an arrest is not necessarily unreasonable. *See Graham*, 490 U.S. at 396 ("[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it[.]").

The issue here is whether it was objectively reasonable for Officer Leon to believe his use of a TASER on Mr. Westry was lawful. *See Muschette*, 910 F.3d at 70 ("An officer is entitled qualified immunity if '*any* reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, *could have* determined that the challenged action was lawful.'") (quoting *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016)). The answer is yes.

At the time of this arrest, it was "clearly established that officers may not use a TASER against a compliant or non-threatening suspect." *Muschette*, 910 F.3d at 69 (citing *Tracy v. Freshwater*, 623 F.3d 90, 96-98 (2d Cir. 2010); *Garcia v. Dutchess Cty.*, 43 F. Supp. 3d 281, 297 (S.D.N.Y. Aug. 21, 2014) (concluding that it is clearly established in the Second Circuit that "it [is] a Fourth Amendment violation to use 'significant' force against arrestees who no longer actively resisted arrest or posed a threat to officer safety")).

As a result, if Mr. Westry was non-compliant or threatening, then the use of a TASER was objectively reasonable. Even viewing the circumstances under Mr. Westry's version of the

events, as this Court must at this stage, Mr. Westry was both non-compliant and threatening. As an initial matter, Officer Leon and the other police officers came to Mr. Westry's home because Mr. Westry had physically assaulted his wife and locked himself in their bedroom with his minor child—none of which is disputed by Mr. Westry. *Compare* Def.'s SMF ¶¶ 13-17, *with* Pl.'s SMF ¶¶ 13-17 (admitting the preceding facts, including that Officer Leon observed Mrs. Westry had "numerous red marks all over her face").

Mr. Westry also concedes "refusing to comply with the [police officers'] instructions" when they came into his bedroom. Pl.'s Opp. at 3; *see also* Westry Dep. at 71:6-8 ("Q: . . . Were you advised several time [sic] to stop resisting? A: Um, one time I heard that phrase."). Mr. Westry also admits that in the exchange with police officers, if they were attempting to grab his infant daughter Amelia, he was also "pulling back." Westry Dep. at 73:3-6 ("Q: . . . as they were pulling [on Amelia], you were also pulling, correct? A: If they were pulling my arms, I was pulling back."). Mr. Westry also can be heard telling the police officers, "you're going to have to kill me," when asked to comply with the police officer's instructions. The undisputed facts thus indicate that Mr. Westry was both non-compliant and threatening.

To the extent that Mr. Westry is arguing that his offer to give them the infant child, after they began using more force, but before the use of the TASER, constitutes compliance sufficient to make the TASER's use excessive, there is no clearly established law that would result in liability for Officer Leon at that level of specificity. *See Emmons*, 149 S.Ct. at 501 ("[T]he clearly established right must be defined with specificity."); *Muschette*, 910 F.3d at 70 ("To determine whether the relevant law was clearly established, we consider the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the

subject, and the understanding of a reasonable officer in light of preexisting law.") (citation and internal quotation marks omitted).

Accordingly, because Officer Leon is entitled to qualified immunity, Mr. Westry's excessive force claim will be dismissed.

**IV. CONCLUSION**

For the foregoing reasons, Officer Leon's motion for summary judgment is **GRANTED in part** and **DENIED in part**.

The Clerk of Court is respectfully directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, on this 21st day of December, 2019.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE